[Civ. No. 14409. Second Dist., Div. Two. June 1, 1944.]

AJAX HOLDING COMPANY (a Corporation), Appellant, v. A. B. HEINSBERGEN et al., Respondents.

Charles A. Bank for Appellant.

Isadore Moidel and Moidel, Moidel, Moidel & Goldsmith for Respondents.

MOORE, P. J.—The question for decision is whether the summary judgment of dismissal is correct where the only writing signed by defendants for the sale of a number of city lots and the apartment hotel on a number of them was escrow instructions prepared by plaintiff in which, before signing, defendants inserted a supplement or counterproposal requiring their own approval of letters relative to the transaction to be written by plaintiff, which supplement was never accepted by plaintiff.

Summary judgment herein denied plaintiff damages allegedly suffered by reason of defendants' refusal to convey real and personal property in accordance with a written agreement. The complaint filed August 3, 1943, alleges (1) plaintiff's compliance with, and its readiness to perform, all of its obligations under an agreement in writing to buy from de-

fendants an apartment house, its furniture, and six lots for $215,000, $40,000 payable in cash, the balance to be evidenced by a promissory note secured by a deed of trust on the property; (2) the refusal of defendants to accept the cash, or to perform any term, covenant or conditions imposed by the writing. As an item of special damage it pleads the employment of attorney Bank and the reasonable value of his services in attempting to prevail upon defendants to perform the contract.

The answer filed August 13, 1943, denies the execution of any agreement to sell the property. It alleges that the minds of the parties had never met upon any terms for the sale and purchase; that to the time of filing the complaint offers and counteroffers had been made, but that the parties never unconditionally agreed upon any offer or counteroffer. It admits that they refused to accept $40,000 on account of the alleged sale; that attorney Bank attempted to negotiate a purchase of the property but not on the terms alleged in the complaint, and denies that defendants entered into any agreement for the sale of their property through Mr. Bank, or that his services were necessary.

The only writing ever signed by defendants was certain escrow instructions prepared and placed by plaintiff with the Title Insurance and Trust Company. Defendants' notice of motion for judgment of dismissal filed August 26, 1943, under section 437c, Code of Civil Procedure, is based upon the grounds (1) that there was never a written contract for the sale as alleged; (2) that plaintiff made an offer by means of proposed escrow instructions; (3) that defendants made a counteroffer which was never accepted in the escrow; and (4) that defendants never approved the documents required of plaintiff by defendants.

The supporting affidavit of witness Cammert, the escrow clerk, avers that the secretary of plaintiff on May 14, 1943, delivered to affiant the escrow instructions already signed by plaintiff as prospective buyer of six lots and the furnished apartment house situate thereon; that before either defendant signed the document, defendants inserted two paragraphs as supplemental instructions, to wit:

"Obtain for me a letter in re inspection of property & any renewal or replacement of the personal property, which letter we reserve the right to approve prior to close of escrow.

"Obtain for me, subject to my approval prior to close of escrow, a letter re plans and specifications for a proposed improvement"; that thereafter affiant notified plaintiff of the insertion of the proposed supplement and requested that plaintiff send an agent of plaintiff to approve in writing the new matter; that on June 21, 1943, affiant forwarded to plaintiff a copy of the proposed supplement and requested their approval and return if satisfactory to plaintiff, but that such document had not been returned prior to August 25, 1943, the date of Cammert's affidavit; that neither has plaintiff ever signed the supplemental instruction nor does the escrow placed by plaintiff contain a writing signed by either of the sellers approving either (1) a letter with reference to the inspection of property and replacement of personal property or (2) a letter with reference to plans and specifications for a proposed improvement; that according to sellers' written instructions they reserved the right to approve both of such letters, which they never did.

Mrs. Heinsbergen's affidavit denied that either alone or with her husband she had ever executed a contract for the sale of their property to plaintiff or that she had ever approved a letter of plaintiff with reference to inspection of the property and renewals or replacements of personal property or a letter with reference to plans and specifications for a proposed improvement as required by the proposed supplemental instruction in the same escrow; and she averred that plaintiff had failed to present for sellers' approval any letter to the escrow depositary on the two subjects included in the proposed supplemental instruction.

Mr. Heinsbergen's affidavit contained substantially the averments and denials in the affidavit of his wife. He averred also that he had heard Mr. Tauber, president of Ajax Holding Company, on August 23, 1943, say that the escrow instructions did not contain all the terms and conditions they should have had to conform to the oral agreement of Ajax and affiant for the proposed purchase; that Mr. Tauber said that affiant had asked that affiant's plans and specifications be used in the event any improvement should be made on the two vacant lots; and that affiant wished his own services to be used to supervise such improvements if made; that he knew of no writing signed by either seller approving of any letter of Ajax touching upon plans and specifications for improvements; that he had never read any of the instructions in the escrow; that

he had read the complaint before he signed it; that he knows of no written agreement with defendants for the purchase of the apartment hotel and personalty, except the escrow instructions which are referred to in that part of the complaint which alleges a contract of purchase and sale; that there had been a mutual mistake in stating the consideration in the escrow instructions and that after the instructions had been signed by all parties he and Samuel E. Gordon, vice president of Ajax, had told affiant at the Ajax office that the price would be changed and $10,000 would be added so that affiant would receive the price he and Ajax had agreed orally that Ajax would pay for the property.

In reply to the supporting affidavits of defendants, plaintiff presented the affidavits of attorney Bank, Tauber, and Gordon. By such documents it undertook to prove divers negotiations with defendants; the communication of offers and counteroffers to defendants made by Mr. Bank as agent for plaintiff on and after June 25, 1943; the deposit of such communications and the sum of $35,000 required by the initially proposed escrow instructions filed by plaintiff. But no proof was offered that the proposed supplemental instruction of defendants was ever approved by plaintiff. Mr. Bank filed in the escrow a lengthy letter to defendants dated June 25, 1943, but it contains no clean-cut acceptance of the proposed supplemental instruction. Mr. Tauber gave extensive explanations of the statements averred to have been made by himself on August 23, 1943. Mr. Gordon detailed at length his negotiations with defendants, in one of which he stated to Mr. Heinsbergen that in the event that plaintiff should desire to improve the vacant lots, plaintiff would be willing to consider favorably the use of such plans and specifications and the use of such supervisory services of Heinsbergen whenever such improvements should be made and if, at such time, mutually satisfactory arrangements for compensation should be agreed upon.

To be effective an acceptance must be unequivocal and positive and must comply with the terms of the offer. (*Laird v. McPhee,* 90 Cal.App. 136, 139 [265 P. 501].) It must be approved in the terms in which it is made. The addition of any condition or limitation is tantamount to a rejection of the original offer and the making of a counteroffer. (*Alexander v. Bosworth,* 26 Cal.App. 589, 597 [147 P. 607].)

A counteroffer containing a condition different from that

in the original offer is a new proposal and, if not accepted by the original offeror, amounts to nothing. (*Cooper* v. *Stansbury*, 28 Cal.App. 444 [152 P. 948].) The supplement was definite and unambiguous. Its requirement was for two writings, both of which should be approved by defendants prior to close of escrow. No such documents were to be found in the escrow.

■ It follows that by reason of the failure of plaintiff unequivocally to accept the proposed supplemental instruction, the escrow did not evidence a meeting of the minds of the parties. Moreover, plaintiff's letter of June 25, 1943, proposes that the release price of lots 47 and 48 shall be increased from $15,000 to $25,000. This was a material variance from the terms contained in the original offer. In order to prove the existence of a contract it would have been necessary for plaintiff to prove by parol (1) that the parties had agreed that plaintiff should landscape vacant lots 47 and 48 within six months; (2) that improvements on the vacant lots should harmonize in design with the apartment hotel; (3) that plaintiff would be bound by such condition for seven years; (4) that plaintiff would use defendants' plans for the structure on the vacant lots and use Mr. Heinsbergen's services in making such improvements; (5) that plaintiff would make renewals of movable property of like quality and workmanship; (6) that plaintiff would do certain exterior painting and oiling of the roofs within six months. Inasmuch as a contract for the sale of realty is invalid unless in writing signed by the seller (Civ. Code, § 1624, subd. 4) such parol proof would have been inadmissible. (Code Civ. Proc., § 1856.) ■ Since there was no written contract of the parties there was no issue requiring a deliberate trial. It is not in the class of the Walsh and Krieger cases (18 Cal.2d 439 [116 P.2d 62]; 123 Cal. App.Supp. 777 [10 P.2d 820]) cited by appellant. In each of them issues of fact were raised by the pleadings. Here there is none. The alleged contract for the sale of realty turned out to be a myth.

■ The contention is made that appellant wrote the required letters in full compliance with the oral agreement which specified only the subject matter but no details. It was not the duty of the trial judge to insert what had been omitted, but merely to ascertain and declare the legal effect of the contents of the writings filed by Ajax in the vain hope of completing the escrow. If a counteroffer is clear and explicit and

does not involve an absurdity, its own language is to govern its interpretation. (Civ. Code, § 1638.) When a contract is written, the intention of the parties must be ascertained from the writing alone, if possible. (Civ. Code, § 1639.) Since a contract for the sale of real property is invalid unless it be in writing signed by the party to be charged (Civ. Code, § 1624) it cannot be said that we have a contract where a counterproposal to a written offer was never accepted by the original offeror. The supplemental instruction was in plain English. Appellant readily understood that two new terms were to be added to the instructions proposed by plaintiff and that they must be approved by defendants by filing their written approval *in the escrow*. Instead of accepting the counteroffer by a writing attached to the escrow instructions, plaintiff proceeded belatedly to prepare such a letter as it conceived to have been required. In order for the minds to meet upon the subject, the first act required of plaintiff was to accept the precise offer made. It would then have been in a position to write the letter and request its approval by defendants. It did not even perform the condition proposed, which was that plaintiff get defendants' approval of a letter making definite commitments prior to the close of escrow. The approval of such letter was an essential prerequisite to a binding contract. Where a preliminary contract leaves certain terms to be agreed upon as the final contract it may not be inferred upon what the parties will agree. (*Kerr Glass Mfg. Corp.* v. *Elizabeth Arden Sales Corp.*, 61 Cal.App.2d 55 [141 P.2d 938].)

No issue appearing to have been presented by the complaint, the conclusion of the trial court to dismiss the action was correct.

Judgment affirmed.

Wood (W. J.) J., and McComb, J., concurred.